**STATE of Missouri, Respondent,**

v.

**Kevin SMITH, Appellant.**

No. 73022.

Missouri Court of Appeals, Eastern District, Division Five.

Aug. 11, 1998.

back of the head with his fist, three or four times. Lloyd folded up and slumped against the wall of a building. Bellford told Lloyd to run and then shot him. Lloyd sustained two gunshot wounds in the head and leg. His injuries included scarring, crushed facial bones, loss of ten teeth, nerve damage in the leg, and loss of cognitive and memory functions. Defendant did not testify and did not present any defense witnesses. His defense consisted of an argument that he was not responsible for Bellford's conduct and his punching did not cause serious physical injury. The trial court granted motions for judgment of acquittal of Counts III and IV. It sentenced Defendant as a prior and persistent offender to serve concurrent twelve-year terms on Counts I and II. Defendant does not contest the sufficiency of the evidence to support the verdicts. He argues three points of error in an effort to obtain a new trial.

Nancy L. Vincent, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Catherine Chatman, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant appeals after conviction and sentencing on two charges, assault first degree and a related armed criminal action.

The state charged defendant Kevin Smith, (Defendant) and Robert Bellford (Bellford) with two counts of assault first degree and two counts of armed criminal action. Count I charged defendants with knowingly causing serious physical injury to Ernest Lloyd (Lloyd) by shooting him. Count II charged they committed the assault with the use and assistance of a deadly weapon. Count III charged defendants with assault in the first degree by attempting to kill or cause serious physical injury to Gregory Lamont Hall (Hall) by shooting him. Count IV charged they committed the assault on Hall with the use and assistance of a deadly weapon.

The state offered evidence to support findings that Defendant and Bellford, acting together, shot Lloyd four or five times and ran away together. Just prior to Bellford firing the shots, Defendant punched Lloyd in the

Defendant's first point is the court erred in not sustaining a motion for mistrial because of an improper reference to other crimes. Detective Timothy Kaelin testified regarding the investigation leading to the charges. In order to lay a foundation for admitting a photo array into evidence, the state asked the detective his method for showing the photos. The answer is the subject of this claim of error. The detective testified "Well, we obtained the photographs of the suspects from the record room, and then we had numerous LID photographs in our homicide office from other incidents, and we obtained that particular group." We reject this claim of error for a number of reasons. First, the reference to the homicide office merely identified the source of photographs to be used in a photo array other than Defendant's photograph. The testimony did not constitute a reference to Defendant or Defendant's previous bad conduct or criminal activity. The photographs of defendants, the suspects, came from a record room, not from the homicide office. The testimony would not support a finding that Defendant had other, unrelated criminal charges or convictions. There was no reference to the fact that Defendant had committed, or has been accused of, or charged with, or convicted of, or been associated with, an-

other crime or crimes. *State v. Askew*, 822 S.W.2d 497, 501 (Mo.App. E.D.1992). Second, there is no evidentiary support for the conclusion that the testimony was prejudicial. Defense counsel cross-examined Detective Kaelin regarding his procedure in preparing the photo array. Particularly, she asked the detective's policy when putting together a photo spread in a case such as this. Thereafter, the photo array was offered and received as an exhibit. Moreover, identification was not a disputed issue because there was identification testimony of a friend of Defendant as a fact witness. Finally, Defendant's only request for relief was a motion for mistrial and that requires proof of more than the possibility of prejudice. Point denied.

■ Defendant's second argument is the court erred in failing to submit a requested third degree assault instruction. Defendant's theory is the jury could have concluded that he attempted to cause physical injury, not serious physical injury, by punching Lloyd. We find no error in refusing the instruction. The charge was that Defendant and Bellford acted together in shooting and causing serious physical injury. The evidence regarding punching by Defendant was relevant to support an inference that he and Bellford were acting together. The verdict directing instruction for Defendant required a finding he acted together with or aided Bellford in the shooting. If the jury found they were acting together, then there was no basis for acquitting Defendant of the offense charged and convicting him of a lesser-included offense. *State v. Mease*, 842 S.W.2d 98, 110–111 (Mo. banc 1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993). There is no evidence to support a finding that the assault by punching had some independent purpose such as causing physical, but not serious physical injury. Point denied.

Defendant's final argument involves *Batson* challenges to three venire persons, Thomas, Moorehead, and McIntyre. Defendant made a timely motion, the state responded with explanations and defense counsel attempted to rebut. The trial court found race-neutral reasons for striking these venire persons. We find no error.

■ The explanation with regard to venireperson Thomas was that she knew and worked at the same place as another venireperson, Harrison, and Harrison expressed dissatisfaction with previous police work. The state was concerned because of the close nature of the relationship of these two venirepersons and that they may have talked about, or shared their thoughts about police officers. These explanations are race-neutral and not necessarily pretextual because one white venireperson who was not stricken, Kinion, expressed reservations regarding police response when a friend was the victim of an attempted crime. Kinion said his friend's experience would not hinder his ability as an impartial juror.

■ The state asked venireperson Moorehead if he was related to a certain Edward Moorehead. He was not so related, but the state thought Moorehead was "somewhat agitated" by the question. It also observed Moorehead swinging his head around, looking up at the ceiling and "stuff" which suggested either a disability, some type of ailment or "just being disinterested altogether." The explanation was sufficient.

■ The state indicated that venireperson McIntyre was the victim of a prior assault and the perpetrator was never apprehended. She was not only dissatisfied with the police officers, she had the impression they were not trying to do their job. The state concluded that this personal experience might incline McIntyre to hold police officer witnesses to a higher standard in determining credibility "or anything else" with reference to their testimony. A number of venirepersons had reservations regarding police work. McIntrye, however, expressed reservations regarding her own personal experience as a victim.

The explanations given and accepted by the court, are race-neutral and more than sufficient.

We affirm.

ROBERT G. DOWD, Jr., C.J., and PUDLOWSKI, J., concur.